GATCH *v.* FITCH *et al.*

SUNMAN *v.* GATCH *et al.*

*(Circuit Court, D. Indiana.* February 2, 1888.)

BANKS AND BANKING—NATIONAL BANKS—INSOLVENCY—PREFERENCES BY STOCK-
HOLDER.

Section 2, act Cong. June 30, 1876, (19 St. at Large, p. 63,) provides that the individual liability of shareholders of an insolvent national bank, fixed by Rev. St. U. S. § 5151, "may be enforced by any creditor of such association by bill in equity in the nature of a creditors' bill brought by such creditor on behalf of himself and all other creditors." *Held,* that a mortgage of all his individual property executed by a cashier and stockholder of such bank, after it had closed its doors, to secure a depositor, amounted to a preference, and was void as against a judgment recovered against the cashier by the receiver under Rev. St. U. S. § 5151, either in the hands of the receiver or in those of a purchaser from him for value.

In Equity. On demurrer to cross-bill.

*Duncan, Smith & Wilson,* for cross-complainants.

The cross-bill of Sunman alleged that the City National Bank of Lawrenceburgh closed its doors on August 10, 1883, in insolvency, and never opened up for business thereafter; Walter Fitch, a defendant to the cross-bill, was its cashier, and owned $5,000 of the stock of the bank; that defendant Gatch was a depositor in the bank at the time of its suspension in the sum of $14,-492.37; that there were a large number of creditors, and the assets of the bank were insufficient to pay its creditors in full; that on August 11th, and after the bank had suspended, Gatch, who resided in Lawrenceburgh, demanded and procured of Fitch a mortgage on all the lands owned by Fitch, to secure and protect him as such depositor; that such lands were of the value of $4,000, and constituted all the property owned by Fitch; that Gatch knew that Fitch was such cashier and stockholder, and that this mortgage covered all the property owned by him; that there was no other property out of which an assessment by the comptroller upon Fitch as stockholder, for the benefit of the creditors of the bank, could be paid; that this mortgage was made and received for the purpose and with the intent of securing to Gatch a preference over the other creditors in the payment of his debt; that there was no consideration for this mortgage other than the debt of the bank; that in 1884 the comptroller appointed a receiver for the bank; that the receiver exhausted all the available assets of the bank, which failed to pay the creditors, and thereupon an assessment of 50 per cent. was made by the proper authorities upon all the stockholders, including Fitch; that, Fitch having failed to meet this assessment, the receiver, under instructions, instituted an action in this court against him to recover the amount, and did recover a judgment for $2,500,—the amount of such assessment; that execution issued on this judgment, and was returned *nulla bona;* that thereupon the receiver filed his petition in this court, and, under the instructions and order of this court, sold the judgment to the cross-complainant, at public auction, at the court-house door of Dearborn county, in the city of Lawrenceburgh, after proper notice, the said cross-complainant being the highest and best bidder; that this sale was reported to the court, confirmed, and the judgment assigned to Sunman. Subsequently Gatch brought his suit in the state court to foreclose his mortgage, making Sunman a defendant. The latter procured the removal of the cause to this court, and filed

the foregoing cross-bill. The mortgage consisted in a deed absolute in form, and a defeasance executed by the grantee to the grantor.

Two questions are presented by this demurrer to the cross-bill: (1) Can one of a large number of the creditors of an insolvent national bank take a mortgage on all the property of an individual stockholder, to secure to himself the payment of the debt due from the bank, so as to defeat the right of the receiver to enforce an assessment against such stockholder? In other words, can one of a number of the creditors of an insolvent national bank, after the happening of such insolvency, secure to himself over all other creditors of the bank a preference in the enforcement of the individual liability of a stockholder in such bank? For practically this is what it amounts to. (2) Is there any consideration to uphold the mortgage? The first question presented depends upon the construction to be placed upon the provisions of the national bank act and its amendments. We call attention to the following provisions of the national bank act: Rev. St. U. S. § 5151, provides: "The stockholders of every national banking association shall be held individually responsible, equally and ratably, and not one for another, for all contracts, debts, and engagements of such association, to the extent of the amount of their stock therein, at the par value thereof, in addition to the amount invested in such shares," etc. See Ball, Banks, 164. Section 5210 declares "that the president and cashier of any national banking association shall cause to be kept at all times a full and correct list of the names and residence of all the shareholders in the association, and the number of shares held by each, in the office where its business is transacted. Such list shall be subject to the inspection of all the shareholders and creditors during business hours of each day." Ball, Banks, 210. Section 1 of the act of June 30, 1876, provides "that whenever any national banking association shall be dissolved, and its rights, privileges, and franchises declared forfeited, as provided in section fifty-two hundred and thirty-nine of the Revised Statutes of the United States, or whenever the comptroller shall become satisfied of the insolvency of a national banking association, he may, after due examination of its affairs, in either case, appoint a receiver, who shall proceed to close up such association, and enforce the personal liability of the shareholders, as provided in section fifty-two hundred and thirty-four of said statutes." Ball, Banks, 224. Section 2 of the above act reads: "That when any national banking association shall have gone into liquidation under the provisions of section five thousand two hundred and twenty of said statutes, the individual liability of the shareholders provided for by section fifty-one hundred and fifty-one of said statutes may be enforced by any creditor of such association by bill in equity in the nature of a creditors' bill, brought by such creditor on behalf of himself and of all other creditors of the association against the shareholders thereof, in any court of the United States having original jurisdiction in equity for the district in which said association may have been located or established." Ball, Banks, 244. Section 5234 provides that "on becoming satisfied, as specified in section fifty-two hundred and twenty-six and fifty-two hundred and twenty-seven, that any association has refused to pay its circulating notes as therein mentioned, and is in default, the comptroller of the currency may forthwith appoint a receiver, and require of him such bond and security as he deems proper. Such receiver, under the direction of the comptroller, shall take possession of the books, records, and assets of every description of such association, collect all debts, dues, and claims belonging to it, and, upon the order of a court of record of competent jurisdiction, may sell or compound all bad or doubtful debts, and, on a like order, may sell the real and personal property of such association, on such terms as the court shall direct; and may, if necessary to pay the debts of such association, enforce the individual liability of the stockholders. Such receiver shall pay over all money so made to the treas-

urer of the United States, subject to the order of the comptroller, and also make report to the comptroller of all his acts and proceedings." Section 5236 provides that "from time to time, after full provision has been first made for refunding to the United States any deficiency in redeeming the notes of such association, the comptroller shall make a ratable dividend of the money so paid over to him by such receiver on all such claims as may have been proved to his satisfaction, or adjudicated in a court of competent jurisdiction, and as the proceeds of the assets of such association are paid over to him, shall make further dividends on all claims previously proved or adjudicated, and the remainder of the proceeds, if any, shall be paid over to the shareholders of such association, or their legal representatives, in proportion to the stock by them respectively held." Section 5242 provides that "all transfers of the notes, bonds, bills of exchange, or other evidence of debt owing to any national banking association, or of deposits to its credit; all assignments of mortgages, sureties on real estate, or of judgments or decrees in its favor; all deposits of money, bullion, or other valuable thing for its use, or for the use of any of its shareholders or creditors; and all payments of money to either, made after the commission of an act of insolvency, or in contemplation thereof, made with a view to prevent the application of its assets in the manner prescribed by this chapter, or with a view to the preference of one creditor to another, except in payment of its circulating notes, shall be utterly null and void; and no attachment, injunction, or execution shall be issued against such association or its property before final judgment in any suit, action, or proceeding, in any state, county or municipal court."

What is the purpose, what the policy and intent, of these provisions of the national banking laws? It is manifest that the act contemplates that upon insolvency the assets which go to the creditors shall be equally and ratably distributed among them. The assets of which the bank is possessed, under section 5242, at the time of suspension, and the assets raised, under section 5151, by assessment of the individual stockholders, are placed, when distribution is had, upon exactly the same footing. Section 5234 and section 1 of the acts of June 30, 1876, declare that when a receiver enforces this individual liability, he shall pay over the moneys so raised to the treasurer of the United States, subject to the order of the comptroller, and section 5236 provides for a "ratable" division of the fund among the creditors. And section 2 of the act of June 30, 1876,[1] (Ball, Banks, 244,) provides that when the creditors proceed to enforce such individual liability by creditors' bill, it must be on behalf of all the creditors of the association, thus securing a ratable distribution when the creditors proceed without a receiver. It is true, the act does not say in negative terms that "no preference shall be had" out of this claim against the individual stockholders; but it says the liability shall be for all the creditors, and that the fund shall be ratably divided. Such provisions, construed along with section 5242, which declares that no preference shall be had or obtained by the general creditors of an insolvent national bank out of the assets of the bank, plainly indicates the intent and policy of the laws. Technically speaking, this individual liability is not called an asset of the bank under section 5242, yet, so far as the creditors are concerned, it is as much an asset of the bank as the property in the possession of the bank at the time of its suspension, and is, therefore, in the policy and purpose of section 5242. In other words, reading all these provisions together, as *in pari materia*, it is the manifest intention of the act that all creditors shall be paid ratably and equally, and that no preference shall be allowed. We call attention to a few authorities supporting an elementary rule bearing upon the point. See, particularly, *Oates* v. *Bank*, 100 U. S. 239, 244; *Atkins* v. *Disintegrating Co.*, 18 Wall.

[1] 19 St. at Large, 63.

272, 301; *Jackson* v. *Collins*, 3 Cow. 89, 96; *People* v. *Insurance Co.*, 15 Johns. 358, 381; *Brown* v. *Somerville*, 8 Md. 444, 456; *Ryegate* v. *Wardsboro*, 30 Vt. 746; Co. Inst. 24 V.

*J. K. Thompson* and *D. Turpie*, for defendants.

We take the position herein that a debtor in embarrassed circumstances has, under the common law, an absolute right to prefer a creditor,—to pay or to secure the payment of one of the claims against him,—and this claim may be either a debt due, or one which may become due upon any lawful contingency. It may be either direct or collateral. * * * It may be a debt growing out of or a liability created, or about to mature, by virtue of a note, bond, or statute. As to how it is created makes no difference, so that it be a lawful claim or liability. Fitch was a stockholder in a national bank; the grantee and creditor Gatch was an unpaid depositor therein; the liability of Fitch to Gatch was created and then existed, under section 5151, Rev. St. U. S., quoted *supra*. * * * As long as unpaid deposit of Gatch existed, there was a consideration for the conveyance, because there was a liability of Fitch (under the statute) "individually" to pay it to the extent of the par value of his stock, greatly exceeding Gatch's claim and the value of the property conveyed. The terms of that law are that the stockholder "shall be held individually responsible * * * for all * * * debts * * * of the association." It is not said, "in case the bank fails to pay," or "in case others fail to pay," but his responsibility is direct, individual, several. The subsequent provisions of the act of congress for ascertaining and collecting the amount of the debt do not at all affect its directness and individuality.* It being well determined that at common law a debtor may prefer a creditor, whether the liability so provided for be due, to become due, contingent, direct, or collateral, the deed in controversy can only be defeated by some legislation clearly shown to be in derogation of this common-law right. We have now no general bankrupt law. Is there anything in the national bank law in derogation of this right of preference. In making a stockholder liable for the debts of the bank is to be presumed that congress gave him the power to choose which, if any, of these debts he might prefer in payment out of his own property unless that right is forbidden. * * * Under the well known rule of construction, "expression of one thing is the exclusion of the other," we say that when congress forbids (as it does in section 5242) one class of transfers —that of the bank assets—as an unlawful preference, and says nothing about the other class of transfers,—that of their private assets by stockholders,— the indisputable, undeniable inference is that as to this latter class of transfers, the law is unchanged, and a transfer in preference of his private property by a stockholder is not affected by the act of congress in any way.

WOODS, J. After some hesitation, I have come to the conclusion that the demurrer to the cross-bill should be overruled, there being, as there has been in argument, no dispute that the cross-complainant, as assignee of the judgment against Fitch, has the same right to attack the mortgage in question which the receiver had before the assignment was made. Fitch was not liable directly as surety or otherwise for the indebtedness of the bank to Gatch. In the execution of the mortgage, therefore, he was not exercising the common-law right of preference among creditors who had demands directly against him; and the mortgage was made without consideration, unless the fact that he was a holder of stock of the bank involved such a liability as to afford a binding consideration for the execution of the instrument, and at the same time to warrant the

preference given to Gatch over other creditors of the bank. Was this so? The individual and ratable liability of stockholders in national banking associations for all contracts, debts, and engagements of such association, to the extent of the amount of their stock therein, is definitely declared in section 5151 of the law; but in section 2 of the act of June 30, 1876, it is provided that this liability "may be enforced by any creditor of such association by bill in equity, in the nature of a creditors' bill, brought by such creditor on behalf of himself and of all other creditors," etc. The liability being enforceable only in behalf of all creditors, it seems necessarily to follow that any voluntary discharge or security given for the payment thereof should likewise be for the equal benefit of all creditors, and that any effort to give a preference should be deemed illegal. This conclusion is in harmony with the general and well-established doctrine that the liability of corporate stockholders is a fund, or source of a fund, for the ratable payment of all creditors. If the mortgage in question is valid because of Fitch's liability as stockholder,—and, unless valid for this reason, it was clearly without consideration,—and if such a preference as was here given is valid, then, in the suit by the receiver against Fitch upon his liability as stockholder, he might, it would seem, have pleaded in bar payment of the amount due or payable upon this mortgage, if payment had been made; and, upon the facts as they are shown to be, might have insisted that he should be required to pay nothing to the receiver until the amount of his liability upon this mortgage should be determined and deducted from the amount demanded.

The demurrer is therefore overruled.